UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DDC TECHNOLOGY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1263-B |
| | § | |
| STRUCTURAL GRAPHICS, LLC d/b/a | § | |
| RED PAPER PLANE; PYRITE VR LTD | § | |
| d/b/a MAXBOX VR; LANDSBERG | § | |
| ORORA; and GOOGLE LLC; | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Landsberg Orora's ("Landsberg")'s Motion to Dismiss (Doc. 68). Landsberg moves the Court to dismiss Plaintiff DDC Technology ("DDC")'s Original Complaint (Doc. 1) for lack of personal jurisdiction, improper venue, and failure to state a claim. *See* Fed. R. Civ. P. 12(b). Because the Court finds that it lacks personal jurisdiction over Landsberg, the Motion to Dismiss (Doc. 68) is **GRANTED**, and DDC's claims are **DISMISSED WITHOUT PREJUDICE.**

# I.

# BACKGROUND[1]

Virtual reality does not alter the real requirements of personal jurisdiction. DDC sues various entities for infringement of patents (collectively, the "Asserted Patents")[2] relating to a cardboard virtual reality viewer. In short, in lieu of an expensive virtual reality headset, a user equipped with the cardboard viewer can insert their smart phone into the viewer to create a makeshift virtual reality headset:



FIG. 4

Doc. 1-1, Compl. Ex. A at 5 (depicting the '075 Patent).

The Asserted Patents were invented by Patrick Buckley and assigned to Buckley's company, DODOcase, Inc. Doc. 1, Compl., ¶ 4. DODOcase sold the products for several years but eventually suffered "price pressures resulting from infringers importing competitive products." *Id.* ¶¶ 6–7.

---

[1] The Court draws on the facts as alleged in Plaintiff's Complaint (Doc. 1).

[2] The patents include United States Patent No. 9,420,075, entitled "Virtual Reality Viewer and Input Mechanism," which issued on August 16, 2016 ("the '075 Patent"); United States Patent No. 9,811,184, entitled "Virtual Reality Viewer and Input Mechanism," which issued on November 7, 2017 ("the '184 Patent"); United States Patent No. 10,528,199, entitled "Virtual Reality Viewer and Input Mechanism," which issued on January 7, 2020 ("the '199 Patent"); United States Patent No. 11,093,000, entitled "Virtual Reality Viewer and Input Mechanism," which issued on August 17, 2021 ("the '000 Patent"); and United States Patent No. 11,093,001, entitled "Virtual Reality Viewer and Input Mechanism," which issued on August 17, 2021 ("the '001 Patent").

Weary of litigation over the products, DODOcase assigned the Asserted Patents to DDC under an agreement that DODOcase would "retain[] a financial interest [in] recoveries from enforcement of the Asserted Patents." *Id.* ¶ 8.

DDC filed this suit in June 2022 against several defendants who allegedly violated DDC's Asserted Patents. Doc 1, Compl. Landsberg was accused of both direct and indirect infringement. *Id.* ¶ 20. For direct infringement, Landsberg allegedly manufactured both Google's infringing product, the Google Cardboard V2 Viewer, as well as Landsberg's own infringing product, the "Landsberg Cardboard Viewer" (*id.* ¶¶ 76, 79):



Google Cardboard V2 Viewer. *Id.* ¶ 70.



Landsberg Cardboard Viewer. *Id.* ¶ 79; Doc. 1-21, Compl. Ex. U at 2.

DDC claims Landsberg also indirectly infringed the Asserted Patents "by inducing third parties to have custom [viewers] made in bulk for promotional purposes." Doc. 1, Compl., ¶ 20. Namely, Landsberg's website advertised that its design teams could "partner with [customers] to develop a cutting-edge visual design . . . and [then] print, manufacture, assemble & ship viewers for [customers'] target marketing campaigns." Doc. 1-21, Compl. Ex. U at 2.

In its complaint and response to the motion to dismiss, DDC alleges this Court has personal jurisdiction over Landsberg because Landsberg maintains a place of business in Texas; conducts business in Texas, including sales and offers for sale of the Landsberg Cardboard Viewer; and has employees located in Texas. Doc. 1, Compl., ¶ 23; Doc. 72, Resp., 4–11. In support, DDC includes

several exhibits which primarily consist of, per DDC's own characterization, "publicly available information." *See* Doc. 72, Resp., 15. *See generally* Doc. 72-1, Resp. App., Exs. A–P. For example, Exhibits B, C, and O show Google Maps pages for "Kent H Landsberg Co" and "Landsberg Orora" buildings, which are both located in Texas. Doc. 72-1, Resp. App., Exs. B, C, O. Exhibits D through K provide the LinkedIn profiles of several employees who are located in Texas and have their current employer listed as "Landsberg Orora," "Landsberg Dallas," or "Kent H. Landsberg." *Id.*, Exs. D–K.

DDC also highlights the landsberg.com website as additional support for personal jurisdiction. Namely, the website featured an advertisement for the custom virtual viewers. Doc. 72, Resp., 17; Doc. 72-1, Resp. App., Ex U.  Below that advertisement was a contact form which invited customers to submit their information to "learn more about our custom corrugated solutions." Doc. 72-1, Resp. App., Ex. U.  The website also had a page where customers could request to receive a catalog. Doc. 72, Resp., 12; Doc. 72-1, Resp. App., Ex. N. It is not clear, however, whether the catalogs related to or advertised the virtual viewers. *See* Doc. 72, Resp., 12.

In its motion to dismiss, Landsberg contests this Court's personal jurisdiction. Doc. 68, Mot. Dismiss, 3–13. In short, Landsberg's argument seems to be that DDC has sued the wrong entity within the broader corporate family. *See id.* According to Landsberg, it is a California company with its principal place of business in Buena Park, California. *Id.* at 1. Landsberg further contends it "does not manufacture any products, including the Accused Products identified in the Complaint."[3] *Id.* at 2. Nor does Landsberg "own or occupy any offices, warehouses, stores, facilities,

---

[3] DDC points out that Landsberg has "slyly" limited the declaration by stating it does not *presently* manufacture, sell, or distribute the Accused Products. Doc. 72, Resp., 13. In other words, Landsberg has said nothing about whether it previously manufactured, sold, or distributed the Accused Products. *See id.* The Court notes Landsberg's language and finds Landsberg's implication that "contacts" are only assessed

or other physical places in Texas . . . [or] have a physical place of business in Texas." *Id.* Landsberg has over 869 employees nationwide, but none work in Texas. Doc. 81-1, Reply App., Am. Jones Decl., ¶ 7. And Landsberg also claims it does not not own the domain name or website landsberg.com. *Id.* ¶ 31.

> Landsberg explains the discrepancies:
>
> Landsberg Orora is part of the family of companies previously under the umbrella of Kent H. Landsberg Company, Inc. ("Kent Landsberg"), which was established in 1947 and headquartered in California. . . . As [Kent Landsberg] expanded, its affiliates were often formed and/or identified by their geographic location of operation. In 1983, Orora Limited purchased Kent Landsberg and its affiliates. Over time, many of the affiliated entities in the Orora Limited group were renamed.

*Id.* ¶¶ 20–22. "Landsberg Orora" is used as an assumed name for various entities within the Orora Limited group to reduce confusion and "help these companies with their branding and marketing." *Id.* ¶ 29.

Thus, Landsberg contends, most of the contacts DDC identified in its Complaint and response are attributable not to Landsberg, but rather Orora Packaging Texas, L.P ("Orora Packaging"), a "completely different company" "within the Orora Limited Group" and "not a defendant in this lawsuit." Doc. 68, Mot. Dismiss, 12. Orora Packaging has offices located in Texas. Doc. 81-1, Reply App., Am. Jones Decl., ¶ 23. Orora Packaging (presumably) conducts business in Texas. *See id.* (noting that Orora Packaging is a Texas limited partnership that serves as a distribution company). And Orora Packaging has employees in Texas. *See* Doc. 81-1, Reply App.,

---

at the time of filing to be a misreading of the relevant law (Doc. 81, Reply, 3 n.2). *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (looking to the defendant's past contractual arrangement as a basis for personal jurisdiction); *cf. Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 525 (N.D. Tex. 2001) (Lynn, J.) (noting the court could not consider the defendant's contacts with the forum state *after* the complaint was filed). Nonetheless, the Court finds that, even if Landsberg did sell the virtual viewers at some point, DDC has still failed to carry its burden in establishing Landsberg's contacts with *Texas* such that it could be haled into court here.

Brandt Decl., ¶¶ 3–10 (noting that, according to Landsberg's HR records, the employees identified in the LinkedIn pages were not employees of Landsberg, but rather Orora Packaging). Landsberg does not, however, indicate which entity owns or is responsible for the landsberg.com website.

II.

**LEGAL STANDARD**

This Court applies Federal Circuit law when the "jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (internal quotation omitted); *see also Parti-Line Int'l, L.L.C. v. Bill Ferrell Co.*, 2005 WL 578777, at *2 (E.D. La. Mar. 4, 2005) ("When deciding a personal jurisdiction issue where a patent claim is asserted, this Court applies the law of the Federal Circuit Court of Appeals rather than Fifth Circuit law.")

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017. But "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *accord New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017).

Due process has two elements. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not

offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

A defendant's contacts may give rise to either general or specific jurisdiction. *See NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). General jurisdiction permits a court to hear all claims against nonresident defendants when the defendants' affiliations with the state are so "continuous and systematic as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics*, 566 F.3d at 1017.

The burden initially rests with the plaintiff to establish the defendant's "minimum contacts." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). When a court determines personal jurisdiction based on written materials without an evidentiary hearing, plaintiffs need only show a prima facie case for personal jurisdiction. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). In the context of a motion to dismiss, "a district court must accept *uncontroverted* allegations in plaintiff's complaint as true." *Id.* (emphasis added). But when a defendant challenges a plaintiff's grounds for personal jurisdiction, "the plaintiff must respond by establishing a basis for personal jurisdiction by presenting at least comparable levels of proof." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.6  & n.7 (4th ed. 2022) (collecting cases); *see, e.g.*, *Clark v. Remark*, 1993 WL 134616, at *2 (4th Cir. Apr. 29, 1993) (per curiam) ("The plaintiff . . . must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist."). Once comparable levels

of proof are put forth, the Court must resolve factual conflicts in the plaintiff's favor. *Elecs. for Imaging*, 340 F.3d at 1349; *see also* Wright & Miller, *supra*, § 1067.6.

## III.

## ANALYSIS

DDC claims the Court has both general and personal jurisdiction over Landsberg. Doc. 72, Resp., 15–16. The Court will address each in turn.

A.    *The Court Lacks General Jurisdiction over Landsberg*

For purposes of general jurisdiction, a corporate defendant is paradigmatically "at home" in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). But "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

Here, both parties agree that Landsberg is a California corporation. *See* Doc. 1, Compl., ¶ 13; Doc. 81-1, Reply App., Am. Jones Decl., ¶ 3. DDC makes no allegation as to Landsberg's principal place of business; Landsberg states it is in Buena Park, California. Doc. 81-1, Reply App., Am. Jones Decl., ¶ 4. Rather, to support general jurisdiction, DDC has pointed to two offices in Texas bearing the names "Kent H Landsberg Co" and "Landsberg Orora" on Google Maps. Doc. 72-1, Resp. App., Exs. B, C, O. DDC also claims Landsberg has employees in Texas, based primarily on the LinkedIn pages of several employees with their listed place of employment as "Landsberg Orora," "Landsberg Dallas," or "Kent H. Landsberg." *Id.*, Exs. D–K. Landsberg, however, has countered DDC's allegations with specific declarations establishing that Landsberg has no physical presence or employees in Texas. *See generally* Doc. 81-1, App. Rather, a separate entity within the

- 8 -

corporate family—Orora Packaging—is the reason for the office buildings and employees in Texas. *Id.*

In short, Landsberg has successfully challenged DDC's grounds for personal jurisdiction with declaration evidence showing Landsberg is not the corporate entity operating in Texas. DDC has not responded with any evidence countering this proposition, let alone "comparable levels of proof." *See* Wright & Miller, *supra*, § 1067.6.

As to the website, Landsberg says it does not own the domain name or website landsberg.com, but it does not explain which entity is responsible. *See* Doc. 81-1, Reply App., Am. Jones Decl., ¶ 31. Regardless, merely maintaining a website that can be accessed in the forum state is nowhere near the type of "systematic and continuous" contacts necessary for general jurisdiction. *See, e.g., Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (holding that the district court was "clearly correct" in ruling it lacked general jurisdiction even where defendants had made "12 sales over eight years" to customers in Washington and maintained a website that was available to "all customers throughout the country"). Thus, this Court lacks general jurisdiction over Landsberg.

B.    *The Court Lacks Specific Jurisdiction over Landsberg*

For similar reasons, the Court also lacks specific jurisdiction over Landsberg. The Federal Circuit applies a three-part test in determining whether a district court may exercise specific jurisdiction, asking whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics*, 566 F.3d at 1018.

The Court finds that Landsberg has not purposefully directed its activities at Texas residents. Indeed, beyond the allegations of office buildings and employees, which Landsberg has

successfully rebutted, the only remaining contact with Texas is the landsberg.com website. But, even assuming Landsberg was the entity responsible for the website, the website alone is insufficient to establish minimum contacts with Texas.

In *NexLearn*, the Federal Circuit addressed a similar scenario. *See* 859 F.3d 1371. There, the plaintiff argued the court had specific jurisdiction because the defendant "ha[d] specifically targeted Kansas residents in facilitating the purchase of the [infringing product] . . . by allowing Kansas residents to select 'Kansas' from a dropdown menu in the billing-address section when ordering the [infringing product]." *Id.* at 1377. The plaintiff further noted that the defendant also sent out a "mass-email advertisement" that "instruct[ed] the recipients of its email to learn more about the new features and start creating exceptional e-learning solutions with [the infringing product] today." *Id.* at 1379 (internal quotation and alterations omitted).

The district court dismissed the case for lack of personal jurisdiction, and the Federal Circuit affirmed. *Id.* at 1375, 1381. The court held that the "mere existence of an interactive website," without more, was insufficient to establish a substantial connection with the forum state. *Id.* at 1379. Rather, "[s]omething more," such as "actual sales, targeted advertising, or contractual relationships," was necessary to connect the defendant's infringing acts with the forum state. *Id.* Similarly, the "mass-email advertisement" was not enough to confer specific jurisdiction because it was only "attenuated evidence that [did] not show that the forum State was a target market." *Id.* (internal alterations omitted); *see also GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (concluding that a theory of jurisdiction in which "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' . . . simply cannot hold water").

Here, like in *NexLearn*, Landsberg's website is not enough to establish a substantial connection with Texas. Aside from the website itself, DDC has not shown "something more," as

discussed in *NexLearn. See NexLearn*, 859 F.3d at 1379. For example, DDC has presented no evidence that any virtual viewers were actually sold in Texas. Nor has DDC presented evidence of targeted advertising or contractual relationships in Texas. Rather, DDC's allegations are essentially that, through its website, "Landsberg *offered* the Accused Products for sale in Texas." Doc. 72, Resp., 9 (emphasis added). But while the product may have been offered nationwide, including in Texas, Landsberg has presented evidence rebutting additional contacts. *See* Doc. 81-1, Reply App., Am. Jones Decl., ¶¶ 35–36 (declaring that Landsberg has "never sold any Accused Products" or "confirmed any order for Accused Products" in Texas through the website).

Similarly, Landsberg's webpage for visitors to "Request a Catalog," which included the state of Texas in a billing-address dropdown field, is equally insufficient. *See* Doc. 72-1, Resp. App., Ex U. A customer merely requesting a catalog, which may or may not relate to the Accused Products, is even more attenuated than the forum contacts deemed insufficient in *NexLearn. See NexLearn*, 859 F.3d at 1377–79 (noting that defendant's "inclusion of Kansas in its dropdown" for purchase orders and a "nationally distributed" email advertisement specifically about the infringing product was not sufficient for personal jurisdiction).

Additionally, DDC has provided the Court with no basis to conclude that Landsberg and Orora Packaging are functionally a single entity or are so related as to impute one entity's contacts to the other. Foundational to the notion of both corporate law and personal jurisdiction is the idea that corporations be able to structure their conduct to manage risk. *See Burger King*, 471 U.S. at 472 ("[T]he Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal quotation and citation omitted); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of

corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotation omitted).

As such, the "corporate form is not to be lightly cast aside," and courts generally avoid imputing one corporate entity's contacts to an affiliated entity unless "specific, unusual circumstances call for an exception." *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998); *see also Daimler*, 571 U.S. at 136 (casting doubt on the Ninth Circuit's "agency theory" for imputing contacts and noting, without deciding, that several circuits have held that contacts may be imputed only where the companies are essentially alter egos).

Without additional evidence, the Court declines to cast aside corporate form or assume that entities with similar names are the same for purposes of personal jurisdiction. *See Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*, 346 F. Supp. 3d 908, 932 (S.D. Tex. 2018) (denying the imputation of third-party contacts and noting that multiple entities "using 'Global Maritime' as a shorthand company name or label is no evidence that the companies fail to observe corporate formalities") (internal quotations omitted).

C.      *The Court Denies DDC's Request for Jurisdictional Discovery*

Jurisdictional discovery is "not unique to patent law," and the law of the regional circuit thus applies. *Autogenomics*, 566 F.3d at 1021–22. In the Fifth Circuit, "[a]s the party opposing dismissal and requesting [jurisdictional] discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). "A plaintiff is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a [motion to dismiss]." *Id.* (internal quotation omitted). "But if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state,

the plaintiff's right to conduct jurisdictional discovery should be sustained." *Getagadget, L.L.C. v. Jet Creations Inc.*, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022) (per curiam) (internal quotation and alteration omitted).

In its response, DDC makes a broad request for jurisdictional discovery: "Limited discovery may be the only mechanism sufficient to compel Defendant Landsberg to answer the simple question that only it can answer: **Who** manufactured, sold, and imported the Accused Products clearly defined in the Complaint? And **who** owns/controls such entities." Doc. 72, Resp., 2; *see also id.* at 20–21 (requesting "discovery . . . to identify all potential Landsberg/Orora infringers and their jurisdictional ties to this Judicial District" and seeking disclosure of "Landsberg Orora's communications with other 'Landsberg Entities'").

DDC does not present factual allegations or make specific requests aimed at determining whether Landsberg has the requisite contacts with Texas to sustain personal jurisdiction. Rather, DDC's request is different in both scope and kind: it seeks to understand *who* the infringer was within the broader corporate family, not *whether* Landsberg has any additional contacts with Texas. *See id.* at 2. The discovery is therefore not aimed to produce facts relevant to personal jurisdiction over Landsberg, and its proposed sweep resembles more of a "fishing expedition" than a targeted jurisdictional inquiry. *See Getagadget*, 2022 WL 964204, at *6 ("[T]he district court was not required to authorize a fishing expedition for Getagadget to discover in the first instance whether or not it had actually been injured in Texas, the forum in which it would most prefer to pursue this suit."); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (denying jurisdictional discovery where, among other things, plaintiffs' brief did not describe "how [the discovery] would produce information that would support jurisdiction for [the named defendant]"); *cf. Am. Pats. LLC v. Mediatek, Inc.*, 2019 WL 13150016, at *2 (W.D. Tex. Sept. 20,

2019) ("Despite Lenovo's attempt to reframe the argument, the Court clearly did not authorize a 'fishing expedition' to determine the correct Lenovo entity to sue, but rather limited the jurisdictional discovery to determining whether the <u>named</u> Lenovo entities perform any infringing action."). The Court therefore denies Landsberg's request for jurisdictional discovery.

## IV.

## CONCLUSION

In sum, the Court finds that Landsberg has shown, through declaration evidence, that DDC's allegations regarding business conducted in the forum, office buildings, and employees, are not attributable to the Landsberg entity. The Court therefore **GRANTS** Landsberg's Motion to Dismiss for lack of personal jurisdiction (Doc. 68) and **DISMISSES** DDC's claims **WITHOUT PREJUDICE.** Further, because the Court finds DDC's request for jurisdictional discovery overly broad and unlikely to lead to relevant jurisdictional facts as to Landsberg, the request for jurisdictional discovery is **DENIED.** Lacking personal jurisdiction, the Court need not address the other issues of improper venue or failure to state a claim.

SO ORDERED.

SIGNED: December 19, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE